Shotwell vs. City of New Orleans et als.

No. 9209.

GEORGE K. SHOTWELL VS. CITY OF NEW ORLEANS ET ALS.

When the City Council of New Orleans adopt the annual budget, the estimates of expenditures made therein become appropriations specifically made for the purposes set forth and no diversion of the funds thus appropriated can be made until all the expenditures provided for have been paid.

If there is a surplus after such expenditures have been paid, it may be appropriated to any legitimate purpose.

An amended budget may dispose of other revenues than those destined by the annual budget to specific purposes, but it cannot change these last so long as the expenditures provided for in the annual budget are unextinguished.

The fact that holders of claims provided for in the annual budget have not instituted proceedings to prevent the misappropriation of the revenues allotted to them until ordinances have been passed for the paymennt of claims under an amended budget, does not bar them from asserting their right to priority of payment before any payment to any one has been made.

Creditors of the City may enjoin the diversion of funds that have been specifically appropriated to them. Such injunction is not within the prohibition to any court to order or enforce summary process against the City, but rather a contest between rival creditors for a fund that the City is about to pay to one to the detriment of the other.

APPEAL from the Civil District Court for the Parish of Orleans. Houston, J.

*Nicholls & Carroll* and *T. J. Semmes & Payne* for Plaintiff and for Intervenors, Appellees.

*Joseph P. Hornor* and *Francis W. Baker*, and *Wynne Rogers*, Assistant City Attorney, for Defendants and Appellants.

The opinion of the Court was delivered by

MANNING, J. The plaintiff is the owner of several claims against the City of New Orleans—one for lighting certain streets with oil in October 1882, another for firemen's services in November and December of same year, and a third for salary of police in the last-named month—all of which are embraced in the budget for that year, being parts of sums included in the estimate of expenditures and provided for therein. He alleges that in August 1882 the Council undertook to amend its budget for that year by increasing the estimate of expenditures of the Improvements and Police Departments, and by increasing the estimates of revenue, which latter he charges are fictitious and were made to afford an apparent justification for the increase of expenditures, and that ordinances have been passed for the payment of claims under this amended budget to the prejudice of his claims which are provided for in the regular annual budget. He obtained an injunction

forbidding such payment until his claims had been paid out of the revenues set apart for them. There is not enough to pay all.

There are several interventions—Klein & Co. and the Gas Company, each for over ten thousand dollars, the Firemen's Association for forty thousand dollars, and these join the plaintiff in his demand and procured injunctions each for himself, and Strauss and Bonis intervene and contest the plaintiff's alleged rights, being holders of claims under the amended budget.

The City answers asserting its right to amend its budget, and avers that the ordinances of which the plaintiff complains providing for the payment of claimants under that amendment were passed in due course of administration, and that even if the plaintiff and the intervenors who join him had the right they now assert, they have lost it by their own laches in waiting until others had acquired rights on the funds.

There is thus presented the question whether the city can so amend its annual budget as to impair the rights acquired thereunder, and to provide for new claims under new estimates to the prejudice of those included in the original budget.

The Act of 1879 is very explicit. It makes the adoption by the Council of the annual budget an appropriation of the several sums therein stated to the purposes expressed, and prohibits the diversion of such sums from these purposes for any cause whatever so long as any part of the expenditure for which the appropriation was made is unpaid And then as if to emphasise what had just been said, it adds that these appropriations shall be kept sacred to the object of them until the debt is extinguished. Sess. Acts 1879, p. 58. We have heretofore remarked the absolute requirement of this statute, State ex rel. Samory v. New Orleans, 34 Ann. 474, and the budget is required to be not only a detailed statement of the revenues and of the proposed expenditures, but it must include the requisite amount for contingent expenses. Id. sec. 1.

The intention of the legislature is unmistakeable. It was to check extravagance to which all municipal bodies are prone, and therefore it required that the Council should foresee what revenues it will have and what expenditures it must make— not alone the expenditures needful for ordinary administration but for contingencies as well. The annual budget must procede the opening of the year for which it is made, and in order to give the Council all possible time to make its estimates approach exactitude as near as may be, the actual passing of the budget is deferred to the last month of the year preceding that for which those estimates are made. The experience of all former years—the experience

of the year then passing away will inform the Council of what will be needed, and it must provide for those needs then and there.

This will not interfere with or abridge its power to amend its budget if new and unexpected revenues are realized and new and unforeseen expenditures are needful, provided the one are made payable out of the other. But these unforeseen expenditures cannot be charged to revenues already appropriated, and cannot be paid out of them until the specific objects for which the appropriations or designations have been made are satisfied. It might be that the revenues set apart in the annual budget for particular expenditures would turn out to be larger than was estimated, or that the particular expenditures were less than the estimates, and a surplus would remain after the expenditures had been paid. In such case this surplus would be at the disposal of the Council for any legitimate purpose, but there can be no legitimate purpose to which these revenues can be applied, other than that specified in the annual budget, so long as any part of the expenditure to the payment of which they were destined is unsatisfied.

This is the imperative command of the statute when it emphatically prohibits the diversion for any cause of any sum set forth in the annual budget for a particular purpose from that purpose, and impresses the importance of that inhibition by attaching severe penalties for its infraction. Sec. 5 of the Act of 1879.

It is contended by the defendants that even if this be true, the plaintiff and the intervenors who join him are estopped from complaining by their laches and delay, inasmuch as others have in the interim acquired rights under the amended budget and the ordinances for their payment, whereas if timely action had been taken by the plaintiff and his co-complainants these other parties would have been warned against relying on the ordinances under the amended budget.

In the first place it is difficult to conceive of a more effectual warning than the Act of 1879, for when it gives to the estimates in the annual budget the effect of an appropriation making such estimates *proprio vigore* a destination of certain sums to specific purposes, and forbids the diversion of them to any other purposes for any cause or reason whatsoever, there is no room for doubt about the character of the claims provided for and the fixedness of their status. More emphatic language could not be used to impress this character upon them or to denote their status. Courts have not permitted tax-payers to restrain the payment of money which had been illegally voted by a town if they waited until others had become entitled to the sum voted in reimbursement of outlays made in good faith. But in the case at bar there had been an

State ex rel. Water-works Co, et al, vs. Levy et al.

express appropriation of stated sums for stated purposes and then an attempted user of those sums for other purposes. No one could be in good faith who relied on a diversion of funds already the property of another. So long and so far as they relied upon the appropriations in the amended budget and the revenues applicable thereto they relied on acts which the Council was competent to perform, but the moment such appropriations affected the annual budget creditors they were null. They may lawfully rely upon expected revenues from sources other than those disclosed in the annual budget, but these latter are irrevocably destined to the payment of the budgeted expenditures until they are extinguished.

The defendants pleaded the Act of 1870 in bar of the plaintiff's right to the relief sought by him. This statute declares that no court shall have authority or jurisdiction to order or enforce any summary process against the City, the object of which is to compel the issuing of any order or warrant for the payment of any money. The purpose of that Act has been explained to be to restrict creditors to the ordinary forms in the enforcement of their demands and to protect the means of the City from seizure under execution, etc. State ex rel. Strauss v. Brown, 30 Ann. 79. And in a later case we said that while no court has jurisdiction to issue a mandamus to draw money from the City Treasury, we were not to be understood as holding that a mandamus could not lie to compel the City authorities to do other acts. State ex rel. Klein v. City, 35 Ann. 782.

So far is this suit from being a mandamus to compel the issuing of a warrant for the payment of money, it is an injunction to restrain such payment and to prevent the diversion of funds from objects to which the municipal authorities have appropriated them. It is a contest between rival creditors over a fund that the City is about to pay to one to the detriment of the other.

The lower court maintained the injunctions of the plaintiff and his co-complainants.

Judgment affirmed.