The opinion of the court was delivered by
Nicholls, C. J.
The City Council, on the 15th of December, 1896, adopted its budget for 1897, and on the 16th of the same month it was approved and signed by the Mayor. The judgment making the mandamus peremptory was rendered on the 21st of December, 1896, and signed on the 4th of January, 1897. The original order for the alternative writ bore date December 8, 1896.
Act No. 5 of 1870, referred to by relator, requires in its first section that parties holding contested or disputed claims against the city of New Orleans should establish them by direct ordinary action brought against the city. By the second section it is enacted that thereafter no writ of execution or fieri facias should issue from any of the courts of the State against the city of New Orleans to enforce the payment of any judgment for money against the city, but final judgment against the city condemning the city to pay any sum in money when the same shall have become executory shall have the effect of establishing and fixing the amount of the plaintiff’s demand against the corporation and the plaintiff might cause a certified copy of the said judgment together with a copy of the plaintiff’s petition and the defendant’s answer in the cause in which *949 such judgment was rendered, together with the certificate of the clerk of said court that such judgment is final and executory, to be filed in the office of the comptroller of the city, and it should be his duty to receive the same and cause the same to be registered in his office, of the date on which the same shall have been presented, and when so registered it should be the duty of the comptroller to warrant on the treasurer or disbursing officer for the amount due thereon without any special appropriation of money therefor by the Common Council; provided always that there be sufficient money in the treasury to pay such judgment specially designated and set apart for that purpose in the annual budget or detailed statement of items of liability and expenditure required to be made by the one hundred and twenty-fourth section of Act No. 164 of 1856, or such laws as might thereafter be enacted relating thereto. The third section of the act declared that in case the amount of money designated in the annual budget for the payment of judgments against the city, at the date when any judgment against the city shall have been final and executory, shall have become exhausted, the Common Council shall have power, if they deem it proper, to appropriate from the money set apart in the budget or annual estimate for contingent expenses a sufficient sum of money to pay said judgment or judgments, but if no such appropriation be made by the Common .Council, then all judgments shall be paid in the order in which they shall be filed and registered in the office of the comptroller from the first money next annually set apart for that purpose.
The fourth section subjects certain officers of the corporation to-liability to an action for damages at the hands of any judgment creditors who should have been unjustly delayed in the payment of their demands, or should not have been paid in the due and regular order in which the same were entitled to be paid, or by reason of any unjust preference to other persons.
The one hundred and twenty-fourth section of Act No. 164 of 1856 referred to in the act of 1870 reads as follows:
“ The Common Council shall once in every twelve months, before fixing and deciding upon the amount of taxes to be assessed for the coming year, cause to be made out a detailed estimate exhibiting the various items of liability and expenditure, including the requisite amount for contingent expenses during said year; and shall cause the same to be published for, at least, ten days in the official journal *950 of the city, and such rate of taxation not exceeding one dollar and fifty cents on one hundred dollars of valuation shall thereafter be fixed and assessed as together with other revenues of the city may be necessary to meet said estimated liabilities and expenditures. The adoption of said detailed estimate shall be considered as the appropriation of the amount therein stated for the purposes therein stated and no money shall be drawn from the city treasury except the same shall have been previously appropriated for the purpose for which it was drawn.”
Relator referred the court to State ex rel. Carondelet Canal and Navigation Co. vs. Mayor and City, 30 An. 130, in which it was declared that the duty of the city to make provision for the payment of judgments was discretionery neither as to time or manner — that the law required imperatively that it should be in the next annual budget •and by setting apart — appropriating a sufficient amount out of the annual revenues — that the duty of the Mayor and administrators was plain and the rights of relator absolute.
The decision in question and the law upon which it was based must be read at the present time in connection with legislation as it now exists upon the powers of municipal corporations to create obligations, the extent of the obligations so to be 'created, the instruments by which they are to be evidenced, the ways and means by which they are to be met, the time, place and manner of doing so and the remedies for their enforcement (Act No. 30 of 1877; Constitution of 1879, Act No. 38 of 1879). The present application bears a close resemblance to that made in the ease of State ex rel. Samory vs. City, 34 An. 469. In that case, as in this, the council adopted its budget after the alternative writ of mandamus had been served upon it. Of that particular feature of the case, the court said: “There was nothing in the judicial action had in the relator’s proceeding which, in any manner, restrained or controlled their action in the premises, or which could have authorized or excused them (the council) for postponing the performance of said functions (the adoption of the ■budget) beyond the time fixed by the law itself to await the determination of the claim asserted by him and denied by themselves.” The court, referring to the fact that the budget had been in fact adopted when its judgment was rendered, stated that, under the law of 1879 (No. 38), appropriations made therein were prohibited from being subsequently diverted from the object of the appropriation, and *951 it was at a loss to see where the judiciary derived authority to compel the council to violate this plain provision of the law; that it was a fundamental principle of the law of mandamus that a writ would never be granted in cases where, if issued, it would prove unavailing (High on Extraordinary Remedies; par. 14, and authorities there cited) ; that in the case before it matters were in that situation. It said: “ However clear may have been relator’s right to have had an appropriation made for his demand, and however clear the duty of respondent to have made it, the fact remains that the appropriation was not made. This fact alone would not, perhaps, have been sufficient to defeat his right by mandamus to compel the city authorities to do out of season that which, after proper demand and putting in default, they had failed to do in season. But it is supplemented by the additional fact that the entire revenues have been actually appropriated to other purposes.” The court then showed that the granting by it of the mandamus asked would carry with it, unavoidably, the disturbance of the rights and claims of third parties not before it, and this result was one which should not be permitted through a mandamus. How, asked the court, would the corporation execute the mandamus, if maintained? What appropriation shall they annul or reduce, in order to provide for relator’s demand? The mandamus does not specify. Suppose they should decide for example to provide for it out of the appropriation made for the payment of “ judgments.” Would not the judgment creditors, entitled to the benefit of that appropriation, have the right to enjoin them from so doing? If, on the other hand, they should determine to reduce all the appropriations ratably, that would only expose them to the same assaults by a multitude instead of by a few interested parties. If it be said they may provide for it out' of appropriations for city expenses, the reply is first, that they are not ordered to do so, and under the law, appropriations for those purposes are as inviolable as any others. Secondly, that no doubt upon those funds as well as others, employees have acquired rights; thirdly, that these appropriations may be essential to the alimony or support of the city. We are not concerned with the question of the inadequacy of other legal remedies for the enforcement of relator’s rights. That is a reason for the exercise of the remedy of mandamus when that remedy is otherwise adequate and appropriate. But we hold that in such a matter as that now under discussion mandamus is not, under any cireum- *952 stances, an adequate, appropriate or even legal remedy, and we wish it distinctly understood that we decide nothing else.” The same questions asked and answered by the court in the Samory case may be asked and answered by us in the same way. In the case of State ex rel. Folsom Bros. vs. Mayor and Administrators, 32 An. 713, the court said: “ The first thing that attracts judicial cognizance on the very face of the record is that any decree rendered by us herein * * * must be prospective only. The past is beyond recall and beyond remedy.”
Relator does not claim that he occupies a position that entitles him to an order for the levying of an additional tax to pay him. What he seeks to do is to take the situation just as it is, and through the court to control, in manner, form and for purposes, other than those fixed! by the council itself, the funds to be received in the year 1897 under the budget as made. We are bound to assume, as matters stand, that the Oity Council has gone over the whole ground, and made such disposition of the funds which will accrue to the corporation during the present year as its needs will require, and that if it has failed to make provision for purposes other than it has, it is because, under the constitutional restriction upon its powers, it is not in a condition at present to do so. [Saloy vs. City, 33 An. 83.]
The city has not the same freedom of action it had prior to the Constitution of 1879. We find no allegation in relator’s petition that the financial condition of the city for the year 1897 was such as would have justified the council in making the budget other than it was. There is no attack upon any of its items in the pleadings, and we can not ex proprio molu examine into them. It is not pretended that the authorities have announced an intention of not providing in the future for the payments of judgments, as required by law and in manner as required- when the situation becomes such as to warrant action in that direction. Relator does not look or seek, as did De Leon in State ex rel. De Leon vs. City, 34 An. 477, for the budgeting of his claim on a future budget. He seeks to have us undo what is an accomplished fact, and to collaterally attack what has already been done.
But there is another serious obstacle in the way of relator’s relief. He asks that the court order the council to make provision in the budget for the payment of his two judgments, and he cites in sup *953 port of his demand Act No. 5 of 1877 (extra session) and State ex rel. Carondelet Co. vs. Mayor and Council of New Orleans, 30 An. 130.
Relator’s prayer in the latter case was: “that the council be-compelled to place the judgment rendered in its favor on the 27th. June, 1871, and all judgments rendered previous to its registry, on the next annual budget, and to provide for the payment of all said judgments in the order in which they are registered, through and by means-of all taxes imposed, collected or held for city current expenses not levied or collected, in pursuance of law, for some other specific purpose.”
The demand of the present relator is essentially different from that. Singling out his own judgments he asks, without any pretence that they stand first in the order of registry, that we compel the city authorities to budget specially for them.
A party seeking to have public officers ordered by mandamus to perform duties imposed upon them by a certain specified law, must keep inside of the terms of the law and not travel beyond it. We would not feel justified, under any circumstances, in compelling the performance of any act which would lead up to the payment of judgments out of the order in which the law has declared that they should be paid. The city officers should not be placed by order of court in a situation which would render them liable to. an action for damages if they had placed themselves in that situation of their own motion.
We express no opinion as to the scope of the rights which the relator may be entitled to as holder of the judgments on which he declares whether, by virtue of the pleadings in the cases on which they were rendered and the terms of the judgments themselves he-be entitled as a “general creditor” to be paid out of any and all funds which may be found available for the payment of “ debts ” of the corporation, or whether he be restricted to some special fund or funds. This matter is somewhat discussed in State ex rel. Gas Light Co. vs. City, 37 An. 440.
For the reasons herein assigned it is ordered, adjudged and decreed that the judgment appealed from be and the same is hereby annulled, avoided and reversed; and it is now ordered, adjudged and decreed that relator’s application for a mandamus be and the *954 same is hereby dismissed under reservation of any legal rights which he may have as holder and owner of the judgments on which he declared herein.